Argued September 16, affirmed November 10, reconsideration
denied December 23, 1975, petition for review denied
January 20, 1976

In the Matter of the Adoption of Anthony Roland
Kelley, a Minor.

DILLARD, *Appellant, v.* KUYKENDALL et ux
(Nos. A24225, A24330, CA 4633), *Respondents.*

541 P2d 1304

*Gene A. Killeen,* Portland, argued the cause for appellant. With him on the brief were Solomon, Warren, Killeen & Kirkman, Portland, and Sidney A. Bartels, Gresham.

*David W. Young,* Gresham, argued the cause for respondents. With him on the brief were Young & Freeman, Gresham.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

FORT, J.

Two petitions for the adoption of Anthony Roland Kelley were consolidated for trial. The trial court granted the petition of the child's grandfather and step-grandmother and denied the petition of his great aunt. The great aunt appeals from the decree.

Anthony Kelley was born in Dallas, Texas, on June 10, 1972, to Peggy Ruth Fraley. She was not married to Anthony's father, George Kelley. Later that summer, Peggy Fraley brought Anthony to stay with Daisy Dillard, her aunt, in Sandy, Oregon. On October 30, 1972, in the presence of an attorney, Peggy signed a consent for the adoption of Anthony by Mrs. Dillard, hereinafter called appellant. Peggy Fraley returned to Texas in December 1972, leaving Anthony with appellant. Appellant, however, did not file any adoption proceeding at that time.

At trial, respondents introduced a letter written by Peggy Fraley on October 31, 1972, in which she told her step-mother, Mrs. Kuykendall, that she did not really intend that appellant, Mrs. Dillard, adopt Anthony. No explanation was given for this obvious inconsistency. Ms. Fraley was under periodic psychiatric care after her return to Texas.

Peggy Fraley died in Texas in April 1974. In July 1974, appellant filed her petition for adoption. In September 1974, respondents also filed a petition for adoption. Both petitions were filed in Oregon. Respondents had previously completed custody proceedings for the child in Texas, awarding them custody of Anthony in that state.

Respondent J. D. Kuykendall, aged 49, was Peggy Fraley's father, and respondent Mildred Kuykendall, aged 40, was her step-mother. They live in Corsicana, Texas, and have permanent custody of five-year-old

twins, half siblings to Anthony, who were the off-spring of Peggy Fraley's first marriage. Mr. Kuykendall is a younger half brother of appellant.

Anthony's father, George Kelley, had had no contact with Anthony since the child came to Oregon in 1972, and had provided no support for him. He did not attend the trial, but filed a written appearance therein, acknowledging paternity and consenting to Anthony's adoption by respondents.

The evidence at the trial indicated that appellant, though thrice married, unable to read or write, and having been married at age 12, had been a good mother to her eight children and to Anthony. She is 56 years old, a diabetic, and receives social security disability payments. Her income consisted mainly of the $146 per month disability payment and a minimum of $150 per month which she earned working in a son's berry nursery. She owned some unimproved property valued at $20,000, with an equity of $16,500. She lived in a small house next to her son's home on his property, and Anthony spent time with her son's family. Another son, his girl friend and their small child also lived with her.

Respondents had been married for nearly 20 years and their household included a deaf child from Mrs. Kuykendall's first marriage, a 14-year-old daughter from their own marriage, and twins, aged five, Anthony's half siblings. Mr. Kuykendall had his own welding business and earned a gross income of $12,-000 per year. The marriage appeared stable and the household a healthy and happy one. Mrs. Kuykendall was not employed outside the home.

Children's Services Division made a report on each of the petitioning households. The Division recommended that Anthony be adopted by respondents for the following reasons: they were younger than

appellant, he would have two parents, he would live with his half siblings, the housing would be better, and respondents were financially more stable.

Aided by this brief factual summary of the record, we turn to the trial court's carefully considered opinion, quoting liberally therefrom:

"I have given this matter deep and careful consideration; and, as I indicated yesterday, the Court would be perfectly satisfied to award permanent custody and to approve the adoption of this child with either of the petitioners.

"I have heard nothing of significance that was derogatory of either Mrs. Dillard or of Mr. and Mrs. Kuykendall. Obviously, the Court can't award custody to both and can't approve both petitions, so one of the parties is going to walk out of this courtroom very disappointed.

"In arriving at the decision, the Court has attempted to consider all of the relevant facts and circumstances, not only of the child, but also of the two petitioners; and the Court feels that the following factors are significant on each side: the child has been with Mrs. Dillard virtually since birth. She is the grand-aunt, 56 years of age, and has what purports to be the consent of the now-deceased natural mother. The Courts of the State of Oregon have stressed the importance of maintaining a child in the same environment so long as that is a suitable environment in order to promote the stability of the child.

"Mrs. Dillard has been a good substitute mother, and there is nothing in the record to indicate that anyone has been critical of her in any significant manner. The child has been most fortunate to have this love and care and affection since birth that has been provided by Mrs. Dillard. She deserves great credit for that.

"There are psychologists and psychiatrists who

say that the child's personality and character are formed in the first three years; and, if the child has a good personality and character, it may very well be [due] to the efforts of Mrs. Dillard.

"The Kuykendalls are the maternal grandfather, at age 49, and maternal step-grandmother, at age 40. The[y] offer a two-parent home, love and affection. They presently have custody of the child's half-brother and half-sister. They have the consent of the natural father, and they appear to be financially more stable than Mrs. Dillard. They appear to be in good health and generally concerned about the welfare of the child.

"At least one factor has weighed heavily upon the Court's mind in making this decision. That is the role and the rights of the natural father. The record is not clear whether he abandoned this child wilfully. The record does project that he made no support for the child since the child was born, but the record is silent as to his ability to provide support and whether support was required or requested by the mother or by Mrs. Dillard. He has, in fact, consented to the adoption by the Kuykendalls.

"The natural father's rights have not been judicially terminated by this or any other Court, nor have the provisions of [ORS] Chapter 109 been complied with in terms of attempting to judiciously [sic] terminate his parental rights. * * *

"The Court is of the opinion that, taking the long-range view, the totality of the environment which the Kuykendalls appear to be able to provide, both in terms of emotional, physical, financial and educational contribution, is more stable and will better serve the best long-range interests of the child. The Court is also aware that should the Court deny the petition of the Kuykendalls at this time, that there is every reason to believe, or at least the potential exists, that the natural father

would contest the placement of the child with Mrs. Dillard, which could conceivably result in prolonged intrafamily litigation, which would certainly not be in the best interests of the child or of the members of this family."

The court also expressed concern over its inability on the record here to terminate the parental rights, if any, of the natural father, George Kelley, and thus to its inability in any event to grant appellant a valid decree of adoption. As pointed out, the natural father's consent to adoption extended only to respondents. He was not otherwise a party to appellant's petition.

From our examination of the record we find ourselves in agreement with the trial judge. We are also mindful that the trial judge has had the opportunity to see and hear the contending parties which, of course, is denied to us. We conclude that the granting of the petition for the adoption by the grandparents is in the best interests of the child.

Affirmed.